# EXHIBIT A



**NON-EXCLUSIVE ONLINE ADVERTISING REPRESENTATION AGREEMENT**

**EFFECTIVE DATE:** MAY, 2, 2016

Company: **DEFY Media, LLC**, 498 7th Avenue, 19th Floor, New York, NY 10019 ("**DEFY**")

Participating Company: Proper Media, LLC
("**Publisher**")
Address: 4150 Mission Blvd, Ste 220, San Diego, Ca, 92109

Contact Person: Ryan Miller
Telephone: 858-354-0168
Facsimile: N/A
Email: ryan@proper.io

Publisher Website(s): snopes.com, tvtropes.org, rawstory.com, explosm.net

**Business Terms:**

1. **Scope:**

    (a) **Representation Services.** Publisher hereby acknowledges and agrees that DEFY shall have the non-exclusive worldwide right to represent Publisher during the Term in connection with the non-exclusive world-wide solicitation, sale and placement of Advertising in all mediums and forms, now known or later developed (collectively, the "**Representation Services**") in connection with the above website(s) (individually and collectively, the "**Site**"). "**Advertising**", for purposes of this Agreement, shall be defined as any and all text, graphical and/or video advertisements served on the Site or in connection with any of the Site's URLs or redirected URLs anywhere in the world, including, but not limited to, advertisements sold through third party advertising networks, sponsorships, affiliate programs and any other revenue-generating or value-creating placements on the Site.

    (b) **Site Functionality**. The Site shall have and maintain industry standard functionality during the term at least sufficient to support Internet Advertising Bureau standard Advertising units, video units, rich media units and custom editorial and promotional modules, as such may be mutually modified by the parties hereto (collectively, the "**Site Functions**"). Publisher shall maintain the Site in accordance with reasonable industry standards. Publisher acknowledges that DEFY has no responsibility to review the content of the Site. The Site shall not contain, or contain links to, content promoting the use of illegal substances; pornography; content promoting illegal activity such as underage drinking or drug use, racism, hate speech, "spam," mail fraud, pyramid schemes, or investment opportunities or advice not permitted by law; or content that is libelous, defamatory, contrary to public policy, or otherwise unlawful, except that the foregoing representation shall not apply to any third-party content on or within any user originated content forums or message boards on the Site. Publisher shall not authorize, permit (to the extent within Publisher's control), engage in, or enable the use of any deceptive, incentivized, mechanical, computerized, artificial, fraudulent or other invalid means to increase the number of impressions, page views, click-throughs or any other measure of traffic on or in connection with the Advertising inventory, including, without limitation, by any of the following means: (i) traffic generated by script, macro or any other automated means with the intent to impair the integrity of the traffic generation process; (ii) traffic generated by misleading or incentivized means, including Publisher, its employees, contractors or agents clicking on any Advertising; and/or (iii) offering an end user any inducement of any kind to click on any Advertising (*e.g.*, paying a user to click on an ad, *etc.*), except in the course of standard website operation (collectively, "**Fraudulent Activity**"). For the avoidance of doubt, any impression, page view, click-through, or any other measure of traffic considered by DEFY in its good faith discretion to have been generated by means of Fraudulent Activity prohibited under this Section 2(b) shall not be counted for purposes of calculating any amounts due to Publisher hereunder.



(c)    **Business Process.** All contracting with advertisers, billing and collections shall be DEFY's responsibility. Publisher shall cooperate with DEFY as reasonably requested, in connection with the rendering of Representation Services, including, without limitation, establishing placement procedures and providing technical and access assistance in the placement, configuration and installation of Advertising, and data collection. DEFY shall use commercially reasonable efforts to promote and secure Advertising and placement promotions for the Site. Publisher shall not alter, modify, or adapt Advertising creative elements or links in any manner without DEFY's prior written consent. DEFY will be responsible for the location of Advertising on the Site, subject to the consent of Publisher, such consent not to be unreasonably withheld, delayed or conditioned. Publisher will have the right to object in good faith to and have removed from the Site, upon prior written notice to DEFY, any Advertising that according to Publisher in its reasonable good faith determination is objectionable or materially detracts from the end user experience on the Site, or is inappropriate for the Site end user demographics.

2. **Publisher Share:** DEFY and Publisher shall negotiate in good faith the specific Advertising rates, and Publisher's share thereof (collectively, the "**Publisher Share**"), on a period of time and/or campaign-specific basis. DEFY shall submit an insertion order (each an "**Insertion Order**") with pricing and terms and conditions in connection with the Representation Services at specified rates, which Insertion Orders Publisher may accept or decline at its sole good faith discretion. The parties hereto that to the IAB Standard Terms and Conditions for Media Buys of One Year or Less v. 3.0 shall apply to each Insertion Order contemplated hereunder unless otherwise indicated in the Insertion Order. The Publisher Share for each Insertion Order executed by the parties hereunder shall be payable by DEFY to Publisher 45 days after the end of the applicable calendar month in which such revenue is received and recognized by DEFY.

    *Deleted: (90)*

3. **Term.** The term of this Agreement shall commence as of the Effective Date and continue for a period of twelve (12) months thereafter ("**Initial Term**"), unless sooner terminated as provided for herein. This Agreement shall automatically renew for successive twelve (12) month renewal terms (each, a "**Renewal Term**", and together with the Initial Term, the "**Term**") until terminated as set forth herein.

4. **Standard Terms and Conditions.** The "**Standard Terms and Conditions**" attached hereto are an integral part of this Agreement and are incorporated by reference.

DEFY and Publisher have executed this Agreement as of the Effective Date and agree that a facsimile, PDF, or electronic transmission, with facsimile signatures of this fully executed Agreement constitutes an original and legally binding document.

| PUBLISHER | DEFY MEDIA, LLC |
|---|---|
| By: _[signature: Ryan J. Miller]_ | By: _[signature: Diane Newman]_ |
| **Authorized Signatory** | **Authorized Signatory** |
| Name: _Ryan Miller_ | Name: Diane Newman |
| Title: _VP, Advertising_ | Title: VP of Business Development |



**Standard Terms and Conditions**

1. <u>Revenue Accounting.</u> All Advertising billing, invoicing and collection shall be DEFY's responsibility; provided, however, that DEFY shall not be obligated or required to bring any lawsuit or engage any collection services to recover amounts due from Advertising placements. DEFY does not represent, warrant or guarantee that any payment will be made by any advertiser, irrespective of whether the Advertising placement has been recognized, and DEFY shall not be liable to Publisher, in any way, for any non-payment by any advertiser, other than with respect to the Publisher Share contemplated hereunder. DEFY's calculation of the Publisher Share shall be final and binding, absent manifest error. Notwithstanding anything contained herein, in the event: (i) DEFY is not paid by an advertiser in connection with an Advertising placement for which DEFY has paid Publisher within one hundred eighty (180) days following the end of the run period for such Advertising placement (each, a "**Shortfall**"); and/or (ii) DEFY believes any component of the Publisher Share has been generated by Fraudulent Activity in violation of Section 2(b) of the Business Terms, then DEFY shall have the right to deduct from the Publisher Share payable hereunder the amount of any such Shortfall and/or Fraudulent Activity amounts, as applicable. If the Publisher Share is not sufficient to cover such amounts, then Publisher shall refund such amounts to DEFY within fifteen (15) days of DEFY's written notice to Publisher to such effect.

2. <u>Data Collection; Traffic.</u> DEFY may be responsible for the collection of online data, such as page impressions, and the management of data received from co-registration and lead generation activities. Publisher understands and agrees that data may be collected and/or Advertising may be served on the Site using behavioral advertising tools and Publisher shall advise users of such uses in its privacy policy (which privacy policy shall contain provisions no less encompassing than as generally recognized in the internet industry). Publisher acknowledges, for the avoidance of doubt, that DEFY may use non-personally identifiable behavioral data concerning individual users of the Site (or more specific pages thereof) to help target Advertising to those users. DEFY shall own any data including, without limitation, personal identifiable information ("**PII**"), collected by DEFY and its affiliates, partners and/or agents through DEFY's applications and websites. Publisher will own any data including, without limitation, PII that is collected by Publisher and its affiliates, partners and/or agents through Publisher's applications utilized on the Site.

3. <u>Representations and Warranties.</u> DEFY makes no, and expressly disclaims any, warranties, express or implied relating to the functionality of the DEFY advertising network or the Representation Services, including, without limitation, any warranty of merchantability, fitness for a particular purpose, title, non-infringement, the amount of revenue generated from Representation Services, or the DEFY advertising network or otherwise, including, but not limited to, the functionality, performance or results of use thereof. Each party represents and warrants to the other that: (a) it has the full power and authority to enter into this Agreement and fully perform all of its obligations hereunder without violating the legal or equitable rights of any third party; (b) it has all rights necessary to enter into this Agreement and to grant the rights hereunder; and (c) that any materials provided by such party to the other party are free of any software virus, worm, virus macro, Trojan horse or other such component designed to permit unauthorized access, to disable, erase or otherwise harm or maliciously alter software, hardware or data. Except as expressly set forth in this Agreement, the parties make no other warranties hereunder and expressly disclaim all other warranties, express or implied. EXCEPT AS OTHERWISE SET FORTH HEREIN, NEITHER PARTY MAKES ANY WARRANTIES, EXPRESS OR IMPLIED, CONCERNING THE SERVICES TO BE PROVIDED UNDER THIS AGREEMENT. THE SERVICES PROVIDED BY DEFY ARE ON AN "AS IS" BASIS AT PUBLISHER'S SOLE RISK. WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, BOTH PARTIES EXPRESSLY DISCLAIM: (I) ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE; AND (II) ANY WARRANTY REGARDING THE SERVICES OR THE RESULTS OF THE SERVICES, INCLUDING, BUT NOT LIMITED TO, THEIR CORRECTNESS, QUANTITY, QUALITY, ACCURACY, COMPLETENESS, RELIABILITY, PERFORMANCE, TIMELINESS OR CONTINUED AVAILABILITY.

4. <u>Termination.</u> Either party may terminate this Agreement immediately: (a) upon the material breach of any term or condition in this Agreement unless such breach is cured within thirty (30) calendar days following receipt of written notice to the breaching party; or (b) if the other party becomes insolvent, makes a general assignment for the benefit of creditors, files a voluntary petition in bankruptcy, suffers or permits the appointment of a receiver for its business or assets, becomes subject as a bankrupt to any proceedings under any bankruptcy or insolvency law, whether domestic or foreign, or has wound up or liquidated its business voluntarily or otherwise. Additionally, either party may terminate this Agreement at any time upon not less than thirty (30) days prior written notice; provided, however, any Advertising placements agreed to pursuant to Section 2 of the Business Terms shall survive such termination in accordance with the terms and conditions set forth herein.

5. <u>Indemnity.</u> Each party ("**Indemnifying Party**") agrees to indemnify and hold harmless the other party, its parents, affiliates, subsidiaries and its and their officers, directors, consultants and/or employees (collectively, "**Indemnified Party**") from and against any cost, loss or expense (including reasonable attorney's fees) resulting from any claims by third parties for loss, damage or injury caused by any breach of a representation, warranty or covenant of this Agreement by the Indemnifying Party; provided, however, that the Indemnified Party provides the Indemnifying Party with: (a) prompt written notice of such claim or action; (b) sole control and authority over the defense or settlement of such claim or action; and (c) proper and full information and reasonable assistance to defend and/or settle any such claim or action, at the Indemnifying Party's reasonable expense; provided, however, there shall be no obligation by the Indemnifying Party to indemnify the Indemnified Party where such claims result from the gross negligence or knowing and willful misconduct of the Indemnified Party. The Indemnified Party shall have the right, at its expense, to retain legal counsel and/or to participate in and monitor the defense of the claim, provided that the Indemnifying Party shall have the right to direct and control such defense, and the Indemnifying Party shall not settle any such claim or action without the Indemnified Party's prior written approval (not to be unreasonably withheld in light of the nature of the claim or action and the terms of such proposed settlement).

6. <u>Limitation of Liability.</u> NEITHER PARTY SHALL BE LIABLE TO THE OTHER (OR TO ANY PERSON CLAIMING RIGHTS DERIVED FROM A PARTY'S RIGHTS HEREUNDER) FOR ANY INCIDENTAL, CONSEQUENTIAL, SPECIAL, EXEMPLARY OR PUNITIVE DAMAGES OR LOST OR IMPUTED PROFITS OR ROYALTIES ARISING OUT OF THIS AGREEMENT OR ITS TERMINATION, WHETHER FOR BREACH OF WARRANTY OR ANY OBLIGATION ARISING THEREFROM OR OTHERWISE, WHETHER LIABILITY IS ASSERTED IN CONTRACT OR TORT (INCLUDING NEGLIGENCE AND STRICT PRODUCT LIABILITY) AND IRRESPECTIVE OF WHETHER A PART WAS ADVISED, HAD REASON TO KNOW OR KNEW OF THE POSSIBILITY THEREOF. IN ANY OCCURRENCE, A PARTY'S MAXIMUM LIABILITY ARISING OUT OF THIS AGREEMENT, WHETHER THE CAUSE OF ACTION ARISES IN CONTRACT, TORT OR OTHERWISE, SHALL NOT EXCEED THE AMOUNTS PAID AND PAYABLE BY DEFY TO PUBLISHER HEREUNDER IN CONNECTION WITH THE APPLICABLE REPRESENTATION SERVICES CAMPAIGN UNDER WHICH AN APPLICABLE CLAIM AROSE. THE FOREGOING SHALL NOT LIMIT A PARTY'S (A) PAYMENT OBLIGATIONS UNDER THE AGREEMENT; (B) INDEMNIFICATION OBLIGATIONS UNDER SECTION 5; (C) LIABILITY FOR ANY BREACH OF ITS CONFIDENTIALITY OBLIGATIONS UNDER SECTION 9; OR (D) LIABILITY FOR ITS INFRINGEMENT OR MISAPPROPRIATION OF ANY PROPRIETARY RIGHTS OF THE OTHER PARTY.

498 Seventh Avenue, 19th Floor, New York, NY 10018 • www.defymedia.com



7.   **Marketing Activities.** DEFY may promote and market the Site, Publisher and Site content in whatever form that Publisher creates for display on the Site or elsewhere (in the aggregate "**Publisher Content**") in marketing and sales materials, free of charge and where and when appropriate, in DEFY's reasonable discretion, for purposes of promoting the availability of the Site as an Advertising destination pursuant to this Agreement.:

8.    **Relationship of the Parties.** It is understood and agreed that the parties hereto are independent contractors pursuant hereto, and nothing contained herein shall be construed or deemed to make the parties hereto partners or joint venturers, nor shall either party or any of its agents or employees be construed or deemed to be an employee of the other party hereto.

9.   **Confidential Information**. "Confidential Information" means any confidential and/or proprietary information of a party and/or that of its parent, subsidiary or affiliated companies, disclosed by such party to the other, either directly or indirectly, in writing, orally, or by inspection of tangible objects, other than information that the receiving party can establish: (a) was publicly known and made generally available in the public domain prior to the time of disclosure; (b) becomes publicly known and made generally available after disclosure, other than through the receiving party's action or inaction; or (c) is in the receiving party's possession, without confidentiality restrictions, prior to the time of disclosure, as shown by the receiving party's files and records. The receiving party shall not at any time: (d) sell, license, or transfer any Confidential Information; (e) disclose or otherwise make available to any person or entity any Confidential Information (other than to those of the receiving party's employees who are bound by use and confidentiality restrictions which are no less protective of us than those contained in this Agreement and who have a legitimate need to know such Confidential Information in connection with this Agreement); or (f) access, use, reproduce, or copy any Confidential Information, except as necessary in connection with the purpose for which such Confidential Information is disclosed to the receiving party and in accordance with this Agreement. Each party agrees to take all measures to protect the secrecy of, and to avoid disclosure and unauthorized use of, the Confidential Information. If required by law to disclose Confidential Information of the other party, the receiving party may do so provided that: (g) it gives the disclosing party prompt written notice of such requirement prior to such disclosure; (h) it, at the disclosing party's request, assists the disclosing party in obtaining an order protecting the Confidential Information from public disclosure; and (i) any such disclosure is limited to the minimum extent necessary to comply with the legal requirement. Publisher may not issue any press release or other public statement regarding the terms or existence of this Agreement without DEFY's prior written consent. Notwithstanding anything to the contrary herein, Publisher agrees that DEFY may, in connection with any marketing materials and presentations prepared by Publisher identify Publisher as a Publisher and describe the services provided hereunder.

10.   **Notices.** Notices required under this Agreement shall be in writing and shall be delivered personally, sent by facsimile transmission (with receipt acknowledged by recipient), by certified or registered mail or through overnight courier. Notice shall be deemed given when so delivered personally, or sent by facsimile transmission or, if mailed by certified or registered mail, three (3) days after the date of deposit in the United States mail, or, if delivered by overnight courier, one (1) day after the date of deposit with a reputable overnight delivery service. Notices shall be sent to the address of the party set forth in the Business Terms Section of this Agreement, or such other address as shall have been specified by either party by written notice hereunder, and in the case of notice to DEFY, with a copy to: SVP, Business & Legal Affairs, DEFY Media, LLC, 498 7th Avenue, 19th Floor, New York, NY 10018. Notwithstanding the foregoing, notices required in the ordinary course of business in connection with fulfillment of each party's obligations hereunder may be made via electronic mail with receipt confirmation by the receiving party.

12.   **General.** This Agreement: (a) is the entire agreement between the parties and supersedes all prior written or oral understandings with respect thereto; (b) may not be amended or modified except in writing by both parties; and (c) may be executed in counterparts and with facsimile or electronic signatures. A waiver of performance or breach of any provision of this Agreement shall not constitute a waiver of any subsequent performance or breach of the same or any other provision. If any provision of this Agreement shall be declared void, illegal or unenforceable, the remainder of this Agreement shall be valid and enforceable to the extent permitted by law. Any provision of this Agreement reasonably intended to survive, shall survive the termination or expiration of this Agreement. This Agreement shall be governed and interpreted in accordance with the laws of the state of New York, without regard to the conflict-of-law rules thereof. The parties hereby consent to the exclusive jurisdiction of the courts of the State of New York for resolutions of all claims, difference and disputes which the parties may have regarding this Agreement. Publisher may not assign this Agreement without DEFY's prior written approval.

13.   **Force Majeure.** No delay or failure by a party hereto in the performance of any obligation of this Agreement shall be deemed a breach of this Agreement nor create a liability, if the same shall arise by reason of any cause beyond the reasonable control of the affected party, including, but not limited to acts of God, provided that the party so affected shall use its best efforts to avoid or remove such cause of nonperformance and continue performance as soon as practicable. In the event such cause exceeds thirty (30) calendar days, the party so affected may cancel this Agreement upon written notice and without further liability.

14.   **Independent Counsel.** **THE PARTIES ACKNOWLEDGE THAT THEY HAVE HAD AN ADEQUATE OPPORTUNITY TO CONSULT WITH INDEPENDENT COUNSEL OF THEIR OWN CHOOSING PRIOR TO SIGNING THIS AGREEMENT. EACH PARTY HAS INDEPENDENTLY EVALUATED THE RISKS AND REWARDS OF THIS AGREEMENT AND ACKNOWLEDGES THAT IT IS NOT RELYING ON ANY REPRESENTATION, GUARANTEE OR STATEMENT OTHER THAN AS EXPRESSLY SET FORTH IN THIS AGREEMENT.**